UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE ARROYO, on behalf of herself and all others similarly situated,<br><br>            Plaintiff,<br><br>      v.<br><br>PFIZER, INC.,<br><br>            Defendant.<br>_____/ | No. C-12-4030 EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>**(Docket No. 19)** |

## I. INTRODUCTION

Plaintiff Joanne Arroyo filed a class action lawsuit against Defendant Pfizer, Inc., claiming that Defendant "made, and continues to make, false and misleading statements in its advertising and packaging" of a nutritional supplement called "Pro Nutrients Probiotic" ("Pro Nutrients") in violation of California law. Amended Complaint (Docket No. 16) ("Am. Comp.") ¶ 20. Plaintiff claims that "Pro Nutrients does not support healthy immune function as advertised, and provides no benefit to an individual's immune system." Am. Comp. ¶ 12. Pfizer has moved to dismiss in full and strike in part Plaintiff's Amended Complaint, arguing in the main that Arroyo alleges "nothing about her experience with the Product or what led her to believe that Pfizer's immunity claim was false or misleading," thus warranting dismissal of the complaint under Fed. R. Civ. P. 12(b)(6). Def.'s Mot. to Dismiss (Docket No. 19) at 2. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** Defendant's motions for the reasons discussed herein.

## II.  FACTUAL & PROCEDURAL BACKGROUND

Plaintiff filed an initial class action complaint against Pfizer on July 31, 2012.  Compl. (Docket No. 1).  The initial complaint alleged that Defendant had violated California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), Consumers Legal Remedies Act ("CLRA"), and had breached an express warranty made to California consumers, by advertising that its Pro Nutrients Probiotic product "supports healthy immune function" when it, in fact, does not.  Compl ¶¶ 6, 7, 21.  Plaintiff based her allegation on a theory that "the Product cannot support healthy immune function because almost all of the Product is excreted through the urine leaving minimal, if any, benefit to an individual's immune system."  Compl. ¶ 7.  The initial complaint also alleged that Defendant's immunity claim was false and misleading because Pfizer had "no competent and reliable scientific evidence to support such claims for the Product."  *Id*. ¶ 31.  Pfizer filed a Motion to Dismiss the initial complaint (Docket No. 15) on October 1, 2012, to which Plaintiff responded with the instant Amended Complaint (Docket No. 16).

Arroyo's Amended Complaint alleges the following facts.  During March of 2012, Ms. Arroyo "purchased and consumed the subject product of this action, 'Pro Nutrients Probiotic' powder packets ('Pro Nutrients' or 'the Product') . . . for the purchase price of approximately $14.99, from a Walgreens pharmacy."  Am. Comp. ¶ 8.  She alleges that she "purchased Pro Nutrients believing it would support or enhance her immune system because she relied on the statement on the packaging for Pro Nutrients that it would in fact support her 'healthy immune function.'"  *Id*. ¶ 9.  Plaintiff states that "[i]n purchasing Pro Nutrients," she "read and relied on the labeling and advertising for Pro Nutrients displayed on the packaging; specifically, she relied on the statement on the side of Pro Nutrients' packaging that it 'supports healthy immune function,' by reading it and thereby believing it would *enhance* her immune function."  *Id*. ¶ 10 (emphasis added).  Plaintiff states that she "used Pro Nutrients according to the directions on the Product's label, but stopped using Pro Nutrients because it failed to support her healthy immune function, or in other words, Pro Nutrients failed to enhance her immune function," but she does not state why she formed this opinion, or how she came to learn that the product did not function as advertised.  *Id*. ¶ 11.  She then concludes that both herself and similarly situated consumers "[have] been damaged by [their]

purchase of Pro Nutrients because the labeling and advertising for Pro Nutrients was and is false and/or misleading under California law because Pro Nutrients does not support healthy immune function as advertised, and provides no benefit to an individual's immune system, such as Plaintiff or members of the Class." *Id*. ¶ 12. Ms. Arroyo claims that she "would not have purchased Pro Nutrients, but for Pfizer's representations, that consuming Pro Nutrients would help support her immune system," and alleges that she and "other purchasers of Pro Nutrients have suffered injury in fact and have lost money as a result of Pfizer's false misrepresentations." Am. Comp. ¶¶ 31, 40. *See also id* ¶ 44 ("As a result of the misleading representations detailed above, Pfizer was able to charge a price premium for Pro Nutrients compared with similar drink powders that did not make such claims.").

Plaintiff advances four causes of action against Pfizer. First, she claims that Defendant's alleged misrepresentations constituted "unfair business acts and/or practices" in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et. seq. See* Am. Comp. ¶¶ 60-76. Second, she claims that "Defendant disseminated, or caused to be disseminated, the deceptive Product labeling and advertising representations that misleadingly claim to support a healthy immune system" in violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et. seq. Id.* ¶ 78; *see also id.* ¶¶ 77-88. Third, she advances a claim under the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et. seq*., alleging that Pfizer "represented that Pro Nutrients has characteristics, ingredients, uses, and benefits which it does not have," and "that Pro Nutrients is of a particular standard, quality, or grade, which it is not." *Id*. ¶ 95; *see also id.* ¶¶ 89-100. Finally, Ms. Arroyo alleges that Defendant breached an express warranty, made through its advertising and labeling, that Pro Nutrients would "support a healthy immune system," through its failure "to provide a product with the promised benefits." *Id.* ¶¶ 101-109. Plaintiff seeks a variety of legal and equitable remedies, including actual, statutory, and punitive damages, restitution, disgorgement of ill-gotten gains, attorney's fees and costs, as well as an injunction prohibiting "Defendant from making any claims for Pro Nutrients found to violate the UCL, FAL, or CLRA." *Id*. at 21-22.

1    Pfizer has moved to dismiss the amended complaint, arguing that "Plaintiff has neither pled
2 facts that add up to a plausible claim, as required by [the Federal Rules of Civil Procedure], nor pled
3 her claims with the requisite particularity, as required by Rule 9(b)." Def.'s Mot. to Dismiss at 2.
4 Neither, Pfizer argues, has Ms. Arroyo alleged facts showing that a reasonable consumer is likely to
5 be deceived by Defendant's representations of the product, as is required to state a claim under the
6 UCL, FAL, and CLRA. Defendant also argues that Plaintiff lacks standing to obtain prospective
7 relief in the form of an injunction since she "does not intend to make another purchase [of] Pro
8 Nutrients, as it doesn't perform for the reason Plaintiff purchased Pro Nutrients--to support her
9 'healthy immune function.'" Am. Comp. ¶ 38. Finally, Pfizer argues that paragraph 5 of the
10 Amended Complaint, which states that "more than two-thirds of all of the members of the proposed
11 Plaintiff Class in the aggregate are citizens of a state other than California," ought to be struck under
12 Rule 12(f) as redundant or confusing insofar as it conflicts with Plaintiff's own proposed narrower
13 definition of the class. *See id.* ¶ 5 and page 10 (limiting the class to "[a]ll persons residing in the
14 State of California").

### III.   DISCUSSION

A.   Motion to Dismiss

    1.   Legal Standard

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead a claim with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough

facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

2. <u>Facial Plausibility</u>

Pfizer argues that Plaintiff's complaint ought to be dismissed under Rule 12 because the facts pled within it "do not add up to a plausible claim under the UCL, FAL, or CLRA, or for breach of warranty." Def.'s Mot. to Dismiss at 7. Defendant reasons that because the "vast majority of allegations underlying Plaintiff's false advertising claims are 'bare assertions' or 'conclusions' that are not entitled to the assumption of truth," the amended complaint does not present a well-pled allegation that Pfizer is liable for false or misleading advertising. *Id.* at 6. *See also id.* at 7 ("Plaintiff's Complaint is now little more than a collection of empty assertions, without supporting facts, that Pfizer's representation that the Product 'supports healthy immune function' is 'false' and/or 'misleading.'"). The Court is inclined to agree.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. Throughout the amended complaint, Arroyo repeatedly alleges that Defendant's representation that Pro Nutrients "supports healthy immune function" is "false" and/or "misleading." *See, e.g.,* Am. Comp. ¶¶ 20-23, 29-30, 32-36. However, nowhere does she allege *why* she believes this to be true. As Defendant argues:

> Something must have occurred between March 2012 (when Plaintiff picked the product off the shelf) and April 2012 (when she sent a demand letter to Pfizer) that led her to believe Pfizer was liable for false advertising. The basic factual allegations that would fill that glaring hole in the Complaint – for example, what Plaintiff expected the product to do, what the Product actually did, and how she came to the conclusion that it did not "support healthy immune function" as

5

> advertised – are all within Plaintiff's knowledge. Yet they are nowhere to be found in the Complaint.

Def.'s Mot. to Dismiss at 7. Particularly in view of the brief time frame between which Plaintiff purchased the product and sent a demand letter, these critical facts explaining why Defendant's clams are false must be pled as part of the "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8.

Plaintiff is correct that in assessing the sufficiency of a complaint under Rule 12(b)(6), a Court must "accept as true all of the allegations contained in a complaint," but not allegations that amount to "legal conclusions" or "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *see id.* ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Twombly*, 550 U.S. at 555).

Plaintiff's numerous statements that Pro Nutrients' claim to "support healthy immune function" is false and/or misleading are nothing more than legal conclusions and conclusory statements of fact. Throughout the amended complaint, Plaintiff fails to plead any underlying factual premise that would justify her *factual conclusion* that Pro Nutrients "does not support healthy immune function and provides no actual benefit to a consumer's immune system," Am. Comp. ¶ 20, or her *legal conclusion* that Pfizer's claim to the contrary "is false and/or misleading under California law, *id*. ¶ 20. Without facts substantiating why the product does not work as advertised or explaining why Defendant's statements were false or misleading, the complaint fails to allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint that offers naked assertions devoid of further factual enhancement "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557 (citation and internal quotation marks omitted).

District courts have dismissed similar UCL, FAL, and CLRA claims when they are pled with insufficient supporting facts. In *Eckler v. Wal-Mart Stores, Inc.*, 12-CV-727-LAB-MDD, 2012 WL 5382218 (S.D. Cal. Nov. 1, 2012), for example, a plaintiff brought suit against Walmart for alleged

false advertising of a dietary supplement called "Equate." The *Eckler* plaintiff's complaint cited a number of scientific studies suggesting that the ingredients of Equate did not support joint comfort, rebuild cartilage, or lubricate joints, as advertised by the product's manufacturer, but none of the studies cited by plaintiff addressed the specific "Equate" product or its particular combination of the studied ingredients. The court found that plaintiff's cited studies could not lend "facial plausibility" to her claims on account of the "mismatch between the representations at issue and the evidence that allegedly debunks them." *Eckler v. Wal-Mart Stores, Inc.*, 2012 WL 5382218 at *7. Without the studies, plaintiff's complaint had no remaining factual support other than her own limited pleadings about her experience with the product. The limited nature of those latter pleadings led the court to find "to the extent Eckler's false advertising claims turns on her own experience with Equate, rather than studies that show it doesn't deliver the joint benefits it suggests, she needs to say far more than, in essence, 'I took Equate and didn't feel any better.'" *Id.*, 2012 WL 5382218 at *8. *See also Damabeh v. 7-Eleven, Inc.*, 5:12-CV-1739-LHK, 2012 WL 4009503 at *7-8 (N.D. Cal. Sept. 12, 2012) ("Plaintiff's allegations fail to provide the Court with sufficient information to evaluate whether Defendant might reasonably be held liable under the UCL or FAL" under Rule 8 because "Plaintiff's allegation that Defendant interfered with Plaintiff's sale of his store lacks any support (e.g. facts regarding what Defendant did to interfere with the sale of Plaintiff's store)."); *Stevens v. JPMorgan Chase Bank, N.A.*, C 09-03116 SI, 2010 WL 329963 (N.D. Cal. Jan. 20, 2010) (dismissing FAL claim for want of specific allegations regarding the allegedly misleading advertisements).[1] *Cf. Rosales v. FitFlop USA, LLC*, 11-CV-

---

[1] In *Stevens*, Judge Illston held:

> Plaintiff alleges that defendants engaged in false advertising by applying "misleading standardized practice and advertising" to "Plaintiff and the Class members." FAC ¶ 40. These misleading practices included "a standardized sales pitch on the telephone" and "uniform advertisements on websites and brochures." *Id.* Plaintiff adds that "such standardized practices and advertisements expressly or implicitly represented that customers had a substantial chance of qualifying for home loan modifications." *Id.* Throughout the FAC, however, plaintiff does not give any specific information regarding these alleged misleading advertisements. Such general claims are precisely the "labels and conclusions, and a formulaic recitation of the elements of a cause of action" that *Twombly* deems insufficient at the

1  00973 W WVG, 2012 WL 3224311 at *5 (S.D. Cal. Feb. 8, 2012) (rejecting defendant's claim that
2  plaintiffs fail to state a UCL claim that is plausible on its face within the parameters of Rule 8(a)
3  because "[p]laintiffs point to several studies involving toning fitness shoes that support their
4  contention that these shoes have no beneficial effect on exercise intensity, improved muscle
5  strength, or toning.").

6  Plaintiff, acknowledging that *Iqbal* and *Twombly* set the applicable Rule 8 pleading standard,
7  nonetheless argues that "[i]t is well settled that 'in testing a pleading against a [motion to dismiss]
8  the facts alleged in the pleading are deemed to be true, however improbable they may be.'" Pl.'s
9  Opp. Br. (Docket No. 20 at 2) (quoting *Del E. Webb Corp. v. Structural Materials Co.*. 123 Cal.
10  App. 3d 593, 604 (Cal. Ct. App. 1981)).  While that may be a true statement of California law, that
11  is not the pleading standard required by Rule 8 as interpreted by the Supreme Court.  The fact that
12  Plaintiff specifically alleges, in a conclusory fashion, the required elements of a false advertising
13  claim does not, in itself, suffice to state a claim in federal court.  *See Iqbal*, 556 U.S. at 678
14  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,
15  do not suffice" to state a viable cause of action.).  Plaintiff's citation to *Vanoni v. Western Airlines*,
16  247 Cal. App. 2d 793, 795 (Cal. App. 1967), and *Reichert v. General Ins. Co. of America,* 68 Cal.2d
17  822, 840 (1968), two California cases discussing the requirements for pleading a cause of action in
18  state court, are inapplicable to her claims before this Court.[2]

19  Plaintiff's pleading deficiency is not cured by the complaint's reference to Dr. Kent Carson's
20  opinion on the general efficacy and value of probiotics as a class of products.  The Amended
21  Complaint indicates that Plaintiff retained Dr. Kent Carson, M.D., "to conduct a good faith and
22  reasonable inquiry into the veracity of Pfizer's claims," and reproduces several statements drawn

---

pleading stage.  *Twombly*, 550 U.S. at 544.

*Stevens v. JPMorgan Chase Bank, N.A.*, 2010 WL 329963 at *5 (N.D. Cal. Jan. 20, 2010).

[2] Plaintiff's citation to *Koehler v. Litehouse, Inc.*, 12-CV-04055-SI (copy provided in Plaintiff's Notice of Supplemental Authority (Docket No. 22)), and *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008), are also inapplicable to the resolution of this issue since neither case discusses, let alone approves of, the *de minimus* pleading standard Plaintiff seeks to advance here.

from a report prepared by him in the text of the complaint. Am. Comp. ¶ 25. Generally, these statements question the efficacy of probiotics products like Pro Nutrients in "supporting" the human immune system. *See id.* ¶¶ 26-28. But the quotations from Dr. Carson are either conclusory in nature or fail to address anything specific about the performance of Pfizer's product. For instance, ¶ 28(a) of the Amended Complaint quotes Dr. Carson as stating, "We can diminish our immune system with medication and an unhealthy life style but we cannot significantly, and in a healthy manner, boost our immune system artificially. The immune system is complex and not altered by a powder." This does not address Pfizer's product specifically. Dr. Carson's qualifying words such as "significantly," "in a healthy manner," and "artificially" do not establish the falsity of Pfizer's representation that its product "supports healthy immune function." His statement at ¶ 28(c) of the Amended Complaint, that "Pfizer's probiotics don't work and P[f]izer 'knows this and laugh[s] all the way to the bank from their false, deceptive advertising without which the consumers would not purchase these product[s]'" is conclusory. In addition to qualifying his generalized statements about probiotics with the use of adverbs and adverbial phrases like "significantly"and "in a healthy manner," he refers to their effects on the "average person" and the needs of average person's immune system; this leaves the possibility that some consumers may incur some benefit by using Pfizer's product. *See id*. ¶ 28(a) ("The *average person* needs no alteration of their gut flora. Our immune system *does not need* a boost from the administration of live bacteria into our system.") (emphasis added). None of these statements adequately support Plaintiff's conclusory assertion that "Pro Nutrients *does not support* healthy immune function and provides *no actual benefit* to a consumer's immune system." *Id.* ¶ 20 (emphasis added).

      The Court is mindful of the Ninth Circuit's general rule that "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams v. Gerber Products Co.*, 552 F.3d at 938-39 ("The facts of this case . . . do not amount to the rare situation in which granting a motion to dismiss is appropriate."). But a case such as *Williams* is distinguishable because the court there found a more specific and more provably false assertion – that Gerber's "use of the words 'Fruit Juice' juxtaposed alongside images of fruits such as oranges, peaches, strawberries, and cherries" on its packaging for "Gerber's Fruit Juice Snacks" could lead a

1  reasonable consumer to believe that the product contained the juices of the fruit depicted, when in
2  fact it did not. *Williams v. Gerber Products Co.*, 552 F.3d at 936. In contrast, Plaintiff's complaint
3  here does not take issue with the content of Pro Nutrients, but rather with its efficacy. Pro Nutrients'
4  effectiveness in supporting a healthy immune system cannot be discerned solely from text and a
5  picture on its packaging in the same way that a consumer of a juice drink could reasonably infer that
6  the drink was comprised of the juices of the fruit pictured. To establish a plausible claim that Pro
7  Nutrients does not work as advertised requires more. Ms. Arroyo has failed to "raise [her] right to
8  relief above the speculative level;" as such, her amended complaint has not "nudged [her] claims
9  across the line from conceivable to plausible." *Twombly*, 550 U.S. at 545-47.

### 3. Heightened Pleading Requirement

Pfizer also argues that dismissal of Plaintiff's claims is warranted because her claims sound in fraud, and are not pled with the particularity required by Fed. R. Civ. P. 9(b). Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir.1993)) (quotation marks omitted). "[M]ere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 540 (9th Cir.1989). Allegations sounding in fraud must include the "who, what, when, where, and how" of the misconduct charged. *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997).

Plaintiff alleges that her claims do not need to comply with Rule 9(b)'s heightened pleading standard. She argues, "[i]t is well-established that, unlike a common law fraud claim, fact-specific or particularized pleading is not required to state a UCL, FAL or CLRA claim, even where 'fraudulent' business acts or practices are the gravamen of the Plaintiff's complaint." Pl.'s Opp. Br. at 7 (citing *Morgan v. AT&T Wireless Services, Inc.*, 177 Cal. App. 4th 1235, 1256 (2009); *Quelimane Co. v. Stewart Title Guaranty Co.* 19 Cal.4th 26, 46-47 (1998); and *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 212 (1983)). As with her earlier

argument for adopting a pure notice pleading standard under Rule 8, Plaintiff's argument here fails to grasp the difference between federal and state procedural rules.

"It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003). Rule 9(b) applies equally to state law causes of action as it does to other claims brought in federal court. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action. '[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule.'") (quoting *Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir.1985) (emphasis in original)). Thus, several recent opinions from this district, including one from this Court, have dismissed UCL and CLRA claims sounding in fraud when not pled with the specificity required by Rule 9(b). *See Arroyo v. Chattem, Inc.*, C 12-2129 CRB, 2012 WL 5412295 at * 5-6 (N.D. Cal. Nov. 6, 2012) (granting motion to dismiss fraud claims for failure to meet the particularity requirements of Rule 9(b) regarding the marketing of "Dexatrim products as 'safe, healthy, and appropriate for consumption,'" despite manufacturer's knowledge that product was tainted with hexavalent chromium); *Fabozzi v. StubHub, Inc.*, C-11-4385 EMC, 2012 WL 506330 (N.D. Cal. Feb. 15, 2012) ("Plaintiff's claims under the UCL alleging deceptive or fraudulent conduct are subject to Rule 9(b)'s particularity requirement, which requires a plaintiff to identify the 'who, what, when, and how' with sufficient specificity as to 'give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong.'") (quoting *Vess v. Ciba–Geigy Corp.,* 317 F.3d at 1105–06).

The Ninth Circuit draws a distinction under Rule 9 between claims alleging a unified course of fraudulent conduct, and those that allege a mix of fraudulent and non-fraudulent conduct. In cases "where fraud is not a necessary element of a claim," but a plaintiff has alleged that a defendant engaged in a unified course fraudulent conduct, and "rel[ies] entirely on that course of conduct as the basis of a claim," the claim "is said to be 'grounded in fraud' or to 'sound in fraud,' and the

pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d at 1103-04. "In other cases, however, a plaintiff may choose not to allege a unified course of fraudulent conduct in support of a claim, but rather to allege some fraudulent and some non-fraudulent conduct. In such cases, only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements." *Id*. at 1104. In *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009), the Ninth Circuit applied its holding in *Vess v. Ciba-Geigy Corp. USA* to the specific context of fraud claims advanced under the CLRA and UCL. *Kearns* held that:

> While fraud is not a necessary element of a claim under the CLRA and UCL, a plaintiff may nonetheless allege that the defendant engaged in fraudulent conduct. A plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading ... as a whole must satisfy the particularity requirement of Rule 9(b).

567 F.3d 1120, 1125 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097) (internal citations omitted).

As in *Kearns*, Plaintiff's claims here allege a "unified course of fraudulent conduct and rely entirely on that course of conduct as the basis" for her claims. *Kearns*, 567 F.3d at 1125. Plaintiff's UCL, CLRA, and FAL claims are all based on the allegation that Pfizer made false and misleading statements in its advertising and packaging of Pro Nutrients, misrepresenting that the product supports a healthy immune function when it allegedly does not. *See* Am. Comp. ¶¶ 68, 83, 95. Plaintiff alleges that Defendant made these allegedly false representations with the intent that consumers rely on them when choosing to purchase the product, *id.* ¶ 24, and that Ms. Arroyo and putative members of her class "suffered injury in fact and have lost money as a result of [Pfizer's] false misrepresentations," *id.* ¶ 31. Sounding in fraud, these claims are required to be pled with particularity under Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d at 1103-04.

As with the pleading requirements imposed by Rule 8, Plaintiff has failed to plead with particularity "the circumstances constituting fraud or mistake" in this matter. Fed R. Civ. P. 9(b). She has not alleged any non-conclusory facts supporting her assertion that the product does not support an individual's healthy immune function, or that it otherwise fails to perform as advertised. Again, without pleading these underlying factual details, Plaintiff has failed to allege "the who,

1  what, when, where, and how" of the misconduct charged. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th

2  Cir.1997).  Rule 9(b) requires a litigant to "set forth *more* than the neutral facts necessary to identify

3  the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it

4  is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d at 1106 (quoting *Decker v. GlenFed, Inc. (In re*

5  *GlenFed, Inc. Sec. Litig.*), 42 F.3d 1541, 1548 (9th Cir.1994) (emphasis in original)).  *See also Blake*

6  *v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir. 1988) (Rule 9(b) requires "specific descriptions of the

7  representations made, [and] *the reasons for their falsity*") (emphasis added)).  Lacking the required

8  particularity, Plaintiff's allegations of fraudulent conduct underlying her UCL, FAL, and CLRA

9  claims fail to meet the standard set by Rule 9(b).

B. <u>Motion to Strike</u>

Defendant asks this Court to strike the third sentence of Paragraph 5 of the amended complaint "because it is redundant, confusing, and liable to cause Pfizer prejudice." Def.'s Mot. to Dismiss at 14.  Pursuant to Fed. R. Civ. P. 12(f), a court may strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter."  "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  A court may strike portions of a pleading where they are liable to "confuse the issues, or otherwise prejudice a party." *Ollier v. Sweetwater Union High School Dist.*, 735 F. Supp. 2d 1222, 1223 (S.D. Cal. 2010).

Pfizer argues that the third sentence of Paragraph 5 ought to be struck because Ms. Arroyo seeks to certify a class consisting entirely of California residents in Paragraph 44, yet alleges in direct contradiction that "more than two-thirds of all of the members of the proposed Plaintiff Class in the aggregate are citizens of a state other than California" in Paragraph 5.  "Because these two allegations are irreconcilable," Pfizer reasons, "and because the presence of the two-thirds allegation creates confusion as to whether Plaintiff intends to try to certify a California or nationwide class, the third sentence of Paragraph 5 should be stricken." Def.'s Mot. to Dismiss at 14.  Plaintiff's opposition brief clarifies that the inconsistent statement in Paragraph 5 was made in order to "to ensure its Class rights are preserved under the Class Action Fairness Act of 2005, for venue and

13

jurisdictional purposes." Pl's Opp. Br. at 15. Plaintiff cites to 28 U.S.C. §§ 1332(d)(4)(A)(i)(I) and (d)(4)(B), which provide that "[a] district court shall decline to exercise jurisdiction . . . over a class action in which—greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed," and when "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed").

There are two problems with Plaintiff's argument. First, whatever the motivation, the two paragraphs are facially inconsistent. Second, Plaintiff overlooks the fact that both §§ 1332(d)(4)(A) and (d)(4)(B) apply only to actions in which at least one named defendant is a citizen of the state in which the action was originally filed. *See* 28 U.S.C. §§ 1332(d)(4)(A) and (d)(4)(B). Pfizer is not a citizen of the State of California, as the amended complaint quite clearly acknowledges. *See* Am. Comp. ¶ 5 ("As set forth below, Plaintiff is a citizen of California, and PFIZER can be considered a citizen of Delaware. Therefore, diversity of citizenship exists under CAFA, as required by 28 U.S.C. § 1332(d)(2)(A)"). This allegation of Paragraph 5 is not only inconsistent, it is "immaterial" to Plaintiff's establishment of jurisdiction under the Class Action Fairness Act. It should be struck.

Plaintiff argues in the alternative that "[a]lthough the Proposed class seeking certification at this time consists of California residents, Plaintiff has reserved the right to amend the Class definition should further investigation and discovery indicate that the Class definition should be expanded." Pl.'s Opp. Br. at 15. Plaintiff has cited no authority for her purported ability to "reserve the right" to amend her definition of the class. Amendments to pleadings are governed by Federal Rule of Civil Procedure 15. Plaintiff cannot insert an inconsistent and confusing placeholder to expand whatever right she may later have under Rule 15 to amend the complaint. The Court, therefore, **GRANTS** Pfizer's motion to strike the third sentence of Paragraph 5 under Rule 12(f).

## IV. CONCLUSION

For the foregoing reasons, Pfizer's motion to dismiss and motion to strike are **GRANTED**. Plaintiff's amended complaint fails to plead sufficient facts to give her false advertising claims the facial plausibility required by Fed. R. Civ. P. 8(a). As her false advertising claims sound in fraud, they are required to meet the heightened pleading requirement imposed by Rule 9(b). However, just

as Plaintiff fails to plead sufficient facts to satisfy Rule 8(a), neither does she meet the heightened pleading requirement imposed by Rule 9(b). Further, Plaintiff's inconsistent allegation in the third sentence of Paragraph 5 is inconsistent with the class definition and immaterial to Plaintiff's establishment of jurisdiction under the Class Action Fairness Act, and is therefore struck. Because the Court determines that Plaintiff's amended complaint fails to satisfy the threshold requirements of Rules 8(a) and 9(b), the Court need not reach Defendant's alternate arguments that Ms. Arroyo's claims fail to satisfy the "reasonable consumer" standard, or that she lacks standing to obtain injunctive relief under Article III. The Court does note, however, that Defendant's argument on standing raises serious questions.

       Rule 15 of the Federal Rules of Civil Procedure mandates that leave to amend "be freely given when justice so requires." Fed. R. Civ. P. 15. "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). *See also Foman v. Davis*, 371 U.S. 178, 182 (1962) (implying leave to amend should be granted in the absence of undue delay, bad faith or dilatory motive, or undue prejudice to the opposing party or futility of amendment). Accordingly, this dismissal is without prejudice. Should Plaintiff seek to file a second amended complaint asserting (consistent with Fed. R. Civ. P. 11) claims that are not otherwise precluded by this order, she shall do so within 30 days of the date of this order.

       The Case Management Conference (CMC) scheduled for February 7, 2013 at 9:00 a.m. has been continued to March 14, 2013 at 9:00 a.m. A Joint CMC statement shall be filed by March 7, 2013.

       This order disposes of Docket No. 19.

       IT IS SO ORDERED.

Dated: January 31, 2013

_____
EDWARD M. CHEN
United States District Judge